RENEE' L. MARTIN, JD
Jurist Doctor at Law
P.O. Box 10135
American Canyon, CA 94503
(707) 514-9579)
Plaintiff, Pro Se

**FILED**

JUL 15 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE' L. MARTIN | Case No. 2:15-cv-02496-TLN-EFB PS |
| Plaintiff | **AMENDED** |
| | **COMPLAINT FOR DAMAGES** |
| vs. | |
| | (1) Breach of Contract |
| AMERICAN AUTOMOBILE | |
| ASSOCIATION OF NORTHERN | (2) Intentional Infliction of Emotional Distress |
| CALIFORNIA NEVADA | [Mental Anguish] |
| AND UTAH | |
| AAA NORTHERN CALIFORNIA | |
| NEVADA AND UTAH | |
| INSURANCE EXCHANGE | |
| CSAA INSURANCE EXCHANGE | |
| | |
| [dba] AAA Insurance | |
| [dba] ACA Insurance Company | |
| | |
| [Formerly known as AAA NCNU IE] | |
| Defendants | |
| and DOES 1-30 inclusive | |

**DEMAND FOR JURY TRIAL**

1

1

2

3

1. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1-30, are unknown to Plaintiff, who therefore sues these defendants by such factious names, and Plaintiff will amend her complaint to show their true names and capacities when they have been ascertained.

2. Defendant, AAA is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California and authorized [by the California Insurance Commissioner] to transact, and transacting, business in this state as an insured for property owners.

3. At all times herein mentioned, December 2, 2013 including up to the present time, Plaintiff was and is the insured with AAA and owner of the of that certain real property commonly described as follows: 2428 Covered Wagon Circle, Elverta, CA, in the County of Sacramento, in which this Court holds jurisdiction.

25

26

**PARTIES AND JURISDICTION**

4. Plaintiff RENEE' L. MARTIN, is the owner of a single-family residence located at 2428 Covered Wagon Circle, Elverta, CA 95626, Sacramento County.

5. Plaintiff is a citizen of the State of California and this property is located in Sacramento County, where this District Court have jurisdiction. Defendant, ACA Insurance Company, hereinafter called AAA Insurance is a corporation LP, licensed to do business in California

6. Defendants Does 1-30, inclusive, are sued under fictitious names. When their true names and capacities are known, Plaintiff will amend this complaint and insert their names and capacities. Plaintiff is informed and believed and thereon alleges that each of these fictitiously named defendants is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and proximately thereby caused the injuries and damages to plaintiff. Plaintiff is now aware that some of the defendants named in this complaint were sued erroneously and will request permission of this court to dismiss all parties that were named, but are not directly related to these issues at hand; such as American Automobile Associations of Northern California Nevada and Utah. During the claim, defendants have sent Plaintiff various correspondence, which identified those names on various letters from defendants. Plaintiff believes it was the intent to confuse Plaintiff for bringing a lawsuit.

3

7. Plaintiff alleges that she has been discriminated based on her race, as a Black female. Those rights are protected under Federal Civil Rights. Although Plaintiff is amending her original complaint, Plaintiff still believes that the breach of contract that Plaintiff is alleging is racially motivated. Plaintiff will seek redress in a higher court if necessary.

8. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Thus, violations of civil rights and actions that are racially motivated, Plaintiff is guaranteed those rights under the United States Constitution.

## JURY TRIAL DEMANDED

12. Plaintiff demands a jury trial on all issues.

## CLAIM FOR RELIEF

13. Plaintiff brings this action against Defendants and Does 1 through 30 for breaching its duties to settle the property claim, timely and adequately, which deprived Plaintiff of her right to enjoy the realty and secure a tenant(s) to rent subject property. Plaintiff seeks to enforce the insurance contract in which Defendants are clearly liable, ; whereas defendants have attributed in some way

to the unlawful acts which led to this

## I. STATEMENT OF FACTS

1.  Plaintiff is Black female and the owner of the subject property, commonly known as: 2428 Covered Wagon Circle, Elverta, CA.

2.  This property is located in the County of Sacramento. Therefore, this Honorable Court holds jurisdiction.

3.  Plaintiff rents the subject property and acts as a Landlord to ensure the property is not destroyed or damaged.

4.  At the time when the damage occurred, Plaintiff had rental insurance on the property and still do have coverage on the property, with no lapse in the policy. This insurance is to cover any damage caused to the property, by tenants, vandals or any other persons destroying the property.

5.  The insurance included loss rents and property damage both inside and outside of the property and included vandalism. Plaintiff took out the policy to cover property damage, in 2003. Every year, the policy was renewed. The policy specifically were to cover damage caused by tenants, as it was a "rental policy".

6.  The policy number DP3-002758207, and is attached to the complaint as

5

EXHIBIT 1. It identified the coverage as follows: Section I, Part A; Dwelling $206,440, Part B; Other Structures $20,644, Part C; Personal Property $10,322, Part D; Fair Rental Value $41,288. The declaration pages also included Section II E and F which are inapplicable to this claim. This exhibit is to be incorporated by reference or by legal effect to establish a contract exist.

7. The defendants' policy declarations, under <u>Forms and Endorsements</u> had been shaded out intentionally to deceive Plaintiff which stated "***Forms And Endorsements Made Part of This Policy at Time of Issue***", which Plaintiff never received as to what those terms and conditions were. All insurance companies conducting business in CA must adhere to the Insurance Regulations, which defendant failed, causing a breach to Plaintiff.

## FIRST CAUSE OF ACTION
### [Breach of Contract]

1. On or about September 4, 2013 in consideration of the quarterly payment, to be applied towards the annual premium of $576.00 made by plaintiff, defendants by its duly authorized agents, accepted payment from Plaintiff to renew the yearly policy, which has been in full force since 2003, without any break in coverage. The policy number is DP3-002758207. Hereinafter referred to as "the policy," wherein and whereby defendant insured Plaintiff, under a policy that covers homeowners against damages caused by tenants or those under the direction of said tenants, in the sums identified in paragraph 7 above.

2. Defendants known of possible risks of tenants, nonetheless assumed by insurer, e.g., damage by tenants, vandalism, burglary, both inside the property and the outside dwelling and structures. Defendants are attempting to make and change the terms and conditions of coverage once liability was established.

3. On or about December 2, 2013, while the policy was in full force and effect, as it continues to be even today without any lapse in coverage, the above-described property was damaged. The last known persons (tenants) to occupy the property are believed to have caused damage and vandalized the interior and exterior and had vacated the subject property, on or about December 2, 2013. This tenant was in the process of being evicted and within this time span, Plaintiff believed the tenant and or all those acing under her direction intentionally destroyed the property, to make it inhabitable to rent to another prospective tenant.

4. Plaintiff entered the property on December 2, 2013 and noticed that the property was not left unlocked and it was in poor condition. Plaintiff knew that she had purchased insurance to cover the losses and loss rents. Therefore, Plaintiff contacted Defendants and made a claim against the policy to restore the property back to the condition before it was vandalized, damaged or destroyed. Some damages were as follows, urine saturated on all the carpets, with burnt iron

marks of an iron on the carpet walls and ceilings, with large red blotches throughout, linoleum floor cut, bathtub damaged, blinds cut and marred, garage door busted in, closet doors broken, toilets broken, dishwasher broken, light fixtures destroyed, electrical broken, extensive dry wall damage, interior doors with fist holes in many doors, and the exterior framing outside destroyed, These are some of the damages but, not all of the damages.

5. Plaintiff has performed all conditions of the policy on her part to be performed and, in accordance with the terms of the policy, gave defendant due and timely written notice and proof of loss, prepared by a licensed contractor/builder, in the amount of $41,504.63, see **EXHIBIT 2** to restore the property to the condition it was in prior to the damage. That estimate did not include loss rents in which defendant is liable. Those loss rents equal to $1,225.00 per month.

7. Plaintiff has made several demands of defendant payment, the latest on July 1, 2014, in the amount of $31,858.00, see **EXHIBIT 3** , but defendant has failed and refused, and continues to fail and refuse pay Plaintiff the total sum of the damages. Defendant has paid a very small partial payment in the approximate amount as follows: (1) $7,812.41, to cover inside property damage and an approximate amount of (2) $6,125.00 to cover five months loss rents. and $0 on the exterior framing

8

which the tenant or someone under her care and control damaged. There is now due, owing, and unpaid to Plaintiff from defendant the sum of $34,689.59 for the balance of the work that needs to be done and the now for loss rents a sum of $22,614; which equals a total sum of $57,303.59. Damages continue to accrue. This property last has been an income property and Plaintiff is losing more and more income daily. Plaintiff believes damages thus far exeeds more than $75,000 to date.

8. As a proximate result of defendant's failure and refusal as herein alleged, Plaintiff has been damaged in the sum of $75,000 and more [amount due under the policy and unpaid], with interest on that sum at the legal rate of 10% from December 2, 2013 until currently.

9. In order to prevail with a breach of contraction action is California, Plaintiff must allege terms of the contract, Plaintiff must establish an existence of a contract between the parties. The attachment, Exhibit 1 establishes that a contract exists.

10. Plaintiff must show that Plaintiff has performed to the terms of the contract. Plaintiff has performed to the terms of the contract, by filing a claim with the defendant timely, immediately upon Plaintiff's knowledge that the property was damaged.

9

11. In addition, Plaintiff was required to allow defendant and its agents access to the property, which Plaintiff has done repeatedly, until it became apparently clear that defendants were using that as a method to stall paying its obligation.

12. In addition, defendants' agent Rick Thurn was sent to degrade, harass and discriminated against Plaintiff. He talked to Plaintiff as to violating Plaintiff's civil rights, as if plaintiff was a slave and in a servitude manner to him. He stopped one short of addressing plaintiff with racial slurs that historically been known to be used against people in plaintiff's racial group.

13. In addition, plaintiff performed by providing timely statements within the time frame and provided photos of the damage and estimates from a builder contractor licensed in California. Plaintiff returned phone calls and timely answered emails from defendants in which additional information was being sought. Plaintiff turned over her entire file in order to perform with the contract. In addition, Plaintiff performed to other terms as necessary.

14. Pursuant to California's Fair Claims Settlement Practices Regulations established fixed time deadlines within which specific claims handling activities must be performed. Effective January 1, 2012, Insurance Code section 790.034 requires insurers to provide insures in at least 10 pt. Tyope font with a particular notice upon receipt of a notice of claim, a copy of the

insurance doe section 790.03(h) and(I) upon receipt of a notice of claim and a copy of Insurance doe section 790.03 in its entirety and Regulations sections 2695.7, 2695.7, 2695.8 and 2695.9 upon or or written request. Plaintiff requested information after the claim was filed, but defendants did not provide the information.

Immediately or within 15 days after receiving a Notice of Claim the insurer must provide the insured with a specified notice, which defendant did not.

15. Immediately or within 15 days after receiving notice of claim the insurer must provide the insured with the following notice: "In addition to section 790.03 of the insurance code, fair claims settlement practices regulations govern how insurance claims must be processed in this state. The defendants did not provide this to plaintiff.

16. Immediately or within 40 days, the Insurer must accept or deny the claim, in whole or in part, section 2695.7(b). Defendants failed to to this and as of today, nearly three years later, has not provided plaintiff with a denial letter and continued acting in bad faith.

17. Sixty days prior to the running of the statute of limitations or contractual period of limitations, the insurer should provided plaintiff with notice that the time limit may be expiring, section 2695.7(h). The defendant failed to do this.

11

18. Under Standards for Prompt Fair and Equitable Settlements, section 2695.7 states that no insurer shall discriminate in its claims settlement practices based upon the national origin, claimant's race. Plaintiff believes the entire reason why defendants breached is soled based on race.

19. Every insurer shall conduct and diligently pursue a thorough, fair and objective investigation and shall not persist in seeking information not reasonably required for or material to the resolution of a claim dispute. Defendant breached this, as Ms. Bailey insisting on how and why certain items were damaged, when plaintiff did not cause it and the last known tenant did not tell plaintiff what caused the damag.

20. The following has occurred:

(a) On or about December 2, 2013, I contacted ACA insurance to report such damage. The person I talked to was Jay Dee Grant, an employee or agent for defendants. He immediately informed me that this insurance company will ***NOT*** be liable to cover any damages ***UNLESS*** it is caused by either vandalism or malicious. Based on review of my policy clearly shows that such losses are ***NOT*** limited coverage to only vandalism or malicious.

(b) Mr. Grant gave Plaintiff a claim number and provide the field representative's phone number. His name was identified as Rick Thurn.

(c) Shortly thereafter, Mr. Thurn contacted me to set-up an appointment to

inspect the damage on December 10, 2013. When Mr. Thurn arrived, Plaintiff was accompanied by her property manager, who is a white individual and who witnessed the hostile manner in which Mr. Thurn spoke to Plaintiff. Plaintiff tried to show him the damages that she knew of thus far, which included showing him other damages such as the appliances that were damaged and he immediately became "argumentative" and sarcastic with Plaintiff. As Plaintiff attempted to show him other damages he became annoyed and not interested in documenting such damages.

(d) On or about December 15, 2013, Plaintiff received a check in the amount of $2,490.64, which referred back to Mr. Thurn's inspection. The check enclosed did *not* give any details for which part of the loss it covered. Based on the inspection, it appeared to be "payment in full" for the loss.

21. No insurer shall delay or deny settlement of a first party claim on the basis that responsibility for payment shall be assumed by others. Basically, defendant delayed and denied restoring the property back to the condition before it was damaged.

22. No insurer shall attempt to settle a claim by making a settlement offer that is *UNREASONABLY LOW.* Initially defendants offered plaintiff a check in the amount of $2,490. EXH. 4

24. Every insurer shall within 30 calendar days tender payment for its

13

liability to settle the claim. The defendant has failed to do so.

25. Ervery insurere shall provide written notification to a first party claimant as to whether the insuere intends to pursue subrogation of the claim. Where an insurer elects not to pursue subrogation, or discontinues pursuit of subrogation, it shall include in its notification a statement that any recovery to be pursued is the responsibility of the first part claimant. Defendants failed to do this.

## **GOOD FAITH**

Plaintiff is entitled to be treated in "good faith" by the defendants and its representatives at all times. Defendants breached that and was not considerate of Plaintiff's needs and failed to commuicate fully and honestly with plaintiff about the policy it sold. Defendants failed to to this by sending its agents, Mr. Thurn who was extremely disrespectful and demeaning to Plaintiff.

In addition, Frontier Adjustors or their behalf attempted to falsify statements and documents that Plaintiff refused to allow him to conduct a further inspection. This was a false statement because there never was no time specifically set for to do the inspection, a time was not confirmed.

Cal Insurance Code 2071 that advised the claimant has the right to receive

a copy of every claim related document in defendants' file pertaining to Plaintiff. Plaintiff repeatedly requested the Frontier report with included 500+ photos from Deena Lurcerno and Ms. Bailey refused to give plaintiff that information.

22. Plaintiff has been humiliated, degraded, ignored, disregarded, disrespected and discriminated by Defendant and/or its agents. Defendants' conduct have caused Plaintiff to believe that this conduct is "racially motivated" because she is a Black female. Defendants' conduct, have been argumentative and hostile with Plaintiff among other things, by Defendants not paying their liability by refusing to pay the claim adequately, in which they are liable infringes on those Civil Rights secured under the United States Constitution.

(g) In Plaintiff's letter it stated that ACA Insurance has acted in "bad faith" and not offered any type of reasonable settlement. In addition, it state that company has a duty to restore

(I) Plaintiff contacted ACA, spoke with Mr. JayDee Grant and advised him the way Rick Thurn was argumentative and disrespectful towards Plaintiff, and that Plaintiff believed it was "racially motivated". During that phonecon, Mr. Grant said that they would send another adjuster who would be a "neutral"

15

inspector from Frontier.

23. Shortly, thereafter, an agent from Frontier came to perform a second "***thorough inspection***". That second inspection lasted approximately four hours. Plaintiff, again met the second inspector, with Plaintiff's property manager. That inspector, identified as Deena Lucero, was very professional, took at least 500 photos, from what Plaintiff was told, and did a full and complete inspection.

24. During the inspection while Plaintiff was present and Plaintiff's property manager was present, the inspector said "***That there are MORE DAMAGES and THINGS WITH THIS PROPERTY WRONG THAT RIGHT.***"

25. Plaintiff continued to request from ACA and Ms. Bailey a copy of such "extensive report" from Ms. Lucero, but ACA refuses to give Plaintiff a copy. Plaintiff believes she is being ignored and disregarded because Ms. Bailey's actions are "racially motivated".

26. On July 28, 2014, Plaintiff proposed a Demand Letter. Plaintiff hoped to be able to reach a reasonable settlement. Seven months later and Defendants refused to offer a reasonable settlement.

27. On July 23, 2014, in response to Plaintiff's offer of Settlement, Plaintiff received an email from Ms. Bailey. In the email it stated " the additional letter sent to the Dept. of Insurance, that AAA are unable to review any additional information until AAA is able to re-inspect the property and that a follow up with

16

Mr. Thurn would be necessary.

28. Plaintiff's Letter of Demand, dated July 28, 2014, pointed out and in response to Ms. Bailey's email that *"AAA is not in any position to make any demands at this point, when the claim has been more that eight month old and should have been settled promptly [generally within thirty days] and AAA refuses to give Plaintiff the break-down or provide Plaintiff with a copy report from Frontier Adjustors.*

29. Plaintiff's demand pointed AAA's attention that it is "unfortunate" that AAA does not want to bring this case to a close and is not willing to pay the damages in which liability is clear. It further stated that Plaintiff has done research on AAA and based on those findings this company has been conducting business in a deceitful manner and fails to pay its obligations in which they are liable. In checking with the Dept. of Insurance for California, AAA has been fined numerous times for its practices and policies for failing to settle claims.

30. Plaintiff further stated in the Demand Letter, for Plaintiff to allow Mr. Thurn to re-inspect was the same very person who caused Plaintiff mental anguish, very argumentative with Plaintiff, refused to note damages and gave Plaintiff a very difficult time;, which Plaintiff believes was "racially motivated". In fact, that was the exact same reasons why AAA said they would send out a neutral person from Frontier Adjustors and wanted me to accommodate that

17

request, which I did.

31. For there to be a condition, at that time nearly eight months later, that Mr. Thurn needed to re-inspect is unreasonable because of his racial discrimination towards Plaintiff during the initial inspection. I showed all items to Mr. Thurn, who refused to acknowledge those items. It is no fault of Plaintiff that when Mr. Thurn had the opportunity to inspect those items refused to do so. I should not have to now accommodate him also most then a year later.

32. Plaintiff pointed out that the second inspector from Frontier Adjustors Ms. Lucero inspected all those above items and took 500 photos of all damage. Therefore, AAA have access to those findings.

## SECOND CAUSE OF ACTION

**[Intentional Infliction of Emotional Distress]**
[Mental Anguish]

33. Plaintiff incorporates all previous paragraph which have Defendants have intentionally inflicted emotional distress on Plaintiff by the following:

(a) by refusing to reasonably settle the claims, which is nearly two years ago.

(b) Plaintiff is disabled and needs that property to produce income; which Plaintiff has suffered economic losses because of Defendants failure to

18

reasonably pay the claim.

(c) Plaintiff has suffered racial discrimination; in addition, Plaintiff has been humiliated, degraded, ignored, disregarded, disrespected and discriminated by Defendant and/or its agents. Defendants' conduct have caused Plaintiff to believe that this conduct is "racially motivated" because she is a Black female.

(d) Ms. Bailey, demands a re-inspection by sending out Mr. Thurn, who Plaintiff has advised the insurance company, was hostile, argumentative and racially target Plaintiff by being sarcastic and refusing to document damages Plaintiff was showing him.

## DAMAGES

34. Plaintiff believes the conduct of Defendants' breach of contract is alleged to be so egregious as to amount of a breach of the "implied covenant of good faith and fair dealing." Plaintiff has suffered damages in amount exceeding $75,000 because of defendants breach of contract, and loss rents accruing since December 2, 2013.

7/14/16
_____
July 14, 2016

Renee' L. Martin, JD
Plaintiff in Pro Per

19

## VERIFICATION

I declare under the penalty of perjury under the laws of California that the foregoing is true and correct as I understand it to be.

Executed on 7/4/16 in American Canyon, CA


Renee' L. Martin, JD
Plaintiff In Pro Per

20

# EXHIBIT 1



**ACA Insurance Company**
P.O. Box 24524 Oakland, CA 94623-1524
(800) 207-3618
To report a claim call (888) 900-6526

# Rental Property Policy Declarations



**POLICY NUMBER: DP3 - 002758207**

RENEWAL DECLARATION

**DESCRIBED LOCATION OF INSURED PROPERTY**
2428 COVERED WAGON CIR
ELVERTA CA 95626

**AGENCY NAME AND ADDRESS**
AAA NV INS AGCY/859/COKLEY          006-7859
9700 W TARON DR
ELK GROVE CA 95757-8145            (800) 207-3618

**NAMED INSURED AND MAILING ADDRESS**

RENEE MARTIN
PO BOX 10135
AMERICAN CANYON CA 94503-0135

| POLICY PERIOD | | |
|---|---|---|
| FROM: 09/04/13 | TO: 09/04/14 | STANDARD TIME: 12:01 A.M. |

This policy will continue for successive policy terms as long as the premiums required are paid, subject to the rate, rules and forms then in effect.

**DESCRIPTION OF PROPERTY**

**PREMIUM TO BE PAID BY:**   INSURED

| YR BUILT | YR ROOF BUILT | CONSTRUCTION TYPE | ROOF TYPE | OCCUPANCY | # OF FAMILY UNITS |
|---|---|---|---|---|---|
| 1979 | 1979 | FRAME, NOT ALUMINUM OR PLASTIC | ASPHALT/FIBERGLASS | TENANT | 1 |

**COVERAGES AND LIMITS OF LIABILITY**

Insurance is provided only with respect to the following coverages for which a specific limit of liability is shown. Subject to all conditions of this policy. The limit of liability for this structure (Coverage A) is based on an estimate of the cost to rebuild your rental property, including an approximate cost of labor and materials in your area, and specific information that you have provided about your rental property.

| SECTION I | | | | SECTION II | |
|---|---|---|---|---|---|
| A DWELLING | B OTHER STRUCTURES | C PERSONAL PROPERTY | D FAIR RENTAL VALUE | E PERSONAL LIABILITY EACH OCCURRENCE | F MEDICAL PAYMENTS TO OTHERS |
| 206,440 * | 20,644 | 10,322 | 41,288 | 300,000 | 5,000 |

* Your Section I coverage limits may have been changed to reflect changes in construction costs & other matters affecting replacement costs.

**Deductible - Section I**

$ 1000   (In case of loss under Section I, we cover only that part of the loss over the deductible)

**FORMS AND ENDORSEMENTS**

| NUMBER EDITION DATE | FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUE | PREMIUM |
|---|---|---|
| | ORDINANCE OR LAW COVERAGE LIMIT - 10% OF 'A' ABOVE OR DP 04.71 BELOW IF APPLICABLE | |
| | THIS POLICY DOES NOT PROVIDE EARTHQUAKE COVERAGE | |
| DL 24 82 02 03 | PERSONAL INJURY | 19.00 |
| DP 04 75 12 02 | ACV-WINDSTRM/HAIL LOSS TO ROOF | 10.00CR |
| DW 04.20 12 05 | LIMITED REPL. COST - DWELLING (150% LIMTD REPL COST) | 24.00 |
| DL 01 04 05 04 | SPEC PROV LIAB - CALIFORNIA | INCL. |
| DL 24 02 12 05 | PERSONAL LIABILITY ADDL COND | INCL. |
| DL 24 11 12 02 | PREMISES LIABILITY | INCL. |
| | Continued on next page... | |

**ADDITIONAL EXPOSURES**

| SWIMMING POOL | SPA/HOT TUB | WOODSTOVE | # OF LIVESTOCK |
|---|---|---|---|
| N | N | N | 0 |

| | |
|---|---|
| BASIC POLICY PREMIUM | |
| ENDORSEMENT PREMIUM | |
| TOTAL POLICY PREMIUM | |

**DISCOUNTS**
PROTECTIVE DEVICE(S).

**1st MORTGAGEE**
Ocwen Loan Servicing Llc
PO BOX 6723
SPRINGFIELD OH 45501-6723

7090074951

**2nd MORTGAGEE**
Bank Of America, Na
PO BOX 961291
FORT WORTH TX 76161-0291

This Declarations is part of your policy. It supersedes and controls anything to the contrary.
It is otherwise subject to all other terms of the policy.

Authorized Representative



**ACA Insurance Company**
P.O. Box 24524 Oakland, CA 94623-1524
(800) 207-3618
To report a claim call (888) 900-6526

# Rental Property Policy Declarations



**POLICY NUMBER: DP3 - 002758207**

**RENEWAL DECLARATION**

**DESCRIBED LOCATION OF INSURED PROPERTY**
2428 COVERED WAGON CIR
ELVERTA CA 95626

**AGENCY NAME AND ADDRESS**
AAA NV INS AGCY/859/COKLEY        006-7859
9700 W TARON DR
ELK GROVE CA 95757-8145        (800) 207-3618

**NAMED INSURED AND MAILING ADDRESS**

RENEE MARTIN
PO BOX 10135
AMERICAN CANYON CA 94503-0135

| POLICY PERIOD | | |
|---|---|---|
| FROM: 09/04/13 | TO: 09/04/14 | STANDARD TIME: 12:01 A.M. |

This policy will continue for successive policy terms as long as the premiums required are paid, subject to the rate, rules and forms then in effect.

**DESCRIPTION OF PROPERTY**

**PREMIUM TO BE PAID BY:**   INSURED

| YR BUILT | YR ROOF BUILT | CONSTRUCTION TYPE | ROOF TYPE | OCCUPANCY | # OF FAMILY UNITS |
|---|---|---|---|---|---|
| 1979 | 1979 | FRAME, NOT ALUMINUM OR PLASTIC | ASPHALT/FIBERGLASS | TENANT | 1 |

**COVERAGES AND LIMITS OF LIABILITY**

Insurance is provided only with respect to the following coverages for which a specific limit of liability is shown. Subject to all conditions of this policy, the limit of liability for this structure (Coverage A) is based on an estimate of the cost to rebuild your rental property, including an approximate cost of labor and materials in your area, and specific information that you have provided about your rental property.

| SECTION I | | | | SECTION II | |
|---|---|---|---|---|---|
| A | B | C | D | E | F |
| DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | FAIR RENTAL VALUE | PERSONAL LIABILITY EACH OCCURRENCE | MEDICAL PAYMENTS TO OTHERS |
| 206,440 * | 20,644 | 10,322 | 41,288 | 300,000 | 5,000 |

* Your Section I coverage limits may have been changed to reflect changes in construction costs & other matters affecting replacement costs.

**Deductible - Section I**

$ 1000  (In case of loss under Section I, we cover only that part of the loss over the deductible)

# FORMS AND ENDORSEMENTS

| NUMBER/ EDITION DATE | FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUE | PREMIUM |
|---|---|---|
| | **ORDINANCE OR LAW COVERAGE LIMIT** - 10% OF 'A' ABOVE OR DP 04 71 BELOW IF APPLICABLE | |
| | **THIS POLICY DOES NOT PROVIDE EARTHQUAKE COVERAGE** | |
| DL 24 33 05 04 | WRK COMP RES EMPL - CALIFORNIA | INCL. |
| DP 00 03 12 02 | DP3 SPE FORM-DP0003 & DL2401 | INCL. |
| DP 04 22 12 05 | LIMITED FUNGI, WET/DRY ROT COV | INCL. |
| DW 01 04 12 05 | SPECIAL PROVISIONS-CALIFORNIA | INCL. |
| IL N0 18 09 03 | CALIFORNIA FRAUD STATEMENT | INCL. |
| 438 BFU NS | LENDER'S LOSS PAYABLE | INCL. |

**ADDITIONAL EXPOSURES**

| SWIMMING POOL | TRAMPOLINE | WOOD STOVE | # OF LIVESTOCK |
|---|---|---|---|
| N | N | N | 0 |

| | | |
|---|---|---|
| BASIC POLICY PREMIUM | $ | 543.00 |
| ENDORSEMENT PREMIUM | $ | 33.00 |
| TOTAL POLICY PREMIUM | $ | 576.00 |

**DISCOUNTS**
PROTECTIVE DEVICE(S).

**1st MORTGAGEE**
Ocwen Loan Servicing Llc
PO BOX 6723
SPRINGFIELD OH 45501-6723

7090074951

**2nd MORTGAGEE**
Bank Of America, Na
PO BOX 961291
FORT WORTH TX 76161-0291

This Declarations is part of your policy. It supersedes and controls anything to the contrary.
It is otherwise subject to all other terms of the policy.

Authorized Representative

INSURED COPY

**Renewals**

Your Rental Property Policy renews automatically on each anniversary of your inception date. The Rental Policy Declarations(both front and back pages), the most recent version of the Rental Property Policy booklet and anything else we provide to you that states that it is part of our renewal offer, together constitute the terms under which we have renewed your Rental Property Policy.

**Notice of Non-Renewal**

We are required to notify you at lease 45 days before policy expiration if we do not offer a renewal of your policy. If we do not notify you 45 days in advance, your policy continues in effect unchanged for 45 days until we provide a notice of non-renewal or an offer of renewal.

**Inquiries**

As a AAA Member Organization, we take pride in putting Members First. Should you have questions regarding your policy, please contact our Customer Service Department at (800) 207-3618 ext. 2711. If, after doing so, your questions remain unanswered, please contact our Member Relations Department at (415) 551-5439.



POLICY NUMBER:  DP3 -002758207
INSURED NAME:   RENEE MARTIN
AGENT NUMBER:   006-7859 -

**PERSONAL LIABILITY**
**DL 24 82 02 03**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PERSONAL INJURY

### DEFINITIONS

The following definitions are added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

### LIABILITY COVERAGES

### A. Coverage E – Personal Liability

The following is added to Coverage E – Personal Liability:

**Personal Injury Coverage**

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgement interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

### SPECIAL COVERAGE LIMITATION – OTHER INSURANCE – ANTI STACKING

1. This insurance shall apply only if an "insured person" has no "personal injury" coverage that applies to the loss under any other policy of insurance.

2. Coverages under any policy issued by us or by any related company, including the California State Automobile Association Inter Insurance Bureau, cannot be added, stacked together or combined to determine the limits of liability or extent of coverage for any "personal injury" offense to which this insurance otherwise applies.

3. This special limitation applies regardless of the number of policies issued by us or a related company, or the number of "insured persons" or "insured locations" under one or more such policies.

### EXCLUSIONS

With respect to the coverage provided by this endorsement, the exclusions under Coverage E – Personal Liability and Coverage F – Medical Payments are deleted and replaced by the following:

This insurance does not apply to:

1. "Personal Injury":

   a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury".

   b. Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

   c. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   d. Arising out of a criminal act committed by or at the direction of an "insured";

   e. Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership maintenance or use of the premises;

   f. Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

g. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

This exclusion does not apply to:

(1) The rental or holding for rental of an "insured location";

   (a) On an occasional basis if used only as a residence;

   (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

   (c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees.

h. Arising out of civic or public activities performed for pay by an "insured";

i. To you or an "insured" as defined under Definition 5.a. or b.;

This exclusion also applies to any claim made or suit brought against you or an "insured":

(1) To repay; or

(2) Share damages with;

another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

j. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants; at any time.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

k. Arising directly or indirectly, in whole or in part out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

However, this does not include any "fungi" that are on, or contained in, a good or product intended for consumption.

2. Any loss, cost or expense arising out of any:

a. Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, "fungi", wet or dry rot, or bacteria; or

b. Claim or suit by or on behalf of governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants, "fungi", wet or dry rot, or bacteria.

## CONDITIONS

With respect to the coverage provided by this endorsement, Condition I. Policy Period does not apply and Conditions A. Limit Of Liability, B. Severability Of Insurance and C. Duties After "Occurrence", are deleted and replaced by the following:

## A. Limit Of Liability

Our total liability under "Personal Injury" Coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage E. This limit is the same regardless of the number of "insureds", claims made or suits brought.

## B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

## C. Duties After "Occurrence"

In the event of loss from a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed.

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and "named insured";

   b. Reasonably available information on the time, place and circumstances of the offense; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the offense;

4. At our request, help us:

   a. To make settlement;

Includes copyrighted material of Insurance Services Office, With Its Permission © ISO Properties, Inc., 2002

**DL 24 82 02 03**

INSURED COPY

     b. To enforce any right of contribution or in-
demnity against any person or organization
who may be liable to an "insured";

     c. With the conduct of suits and attend hear-
ings and trials; and

     d. To secure and give evidence and obtain
the attendance of witnesses;

5. No "insured" shall, except at such "insured's"
own cost, voluntarily make payment, assume
obligation or incur expense other than for first
aid to others at the time of the "personal in-
jury."

All other provisions of this policy apply.


POLICY NUMBER: DP3 -002758207
INSURED NAME: RENEE MARTIN
AGENT NUMBER: 006-7859 -

**DWELLING**
DP 04 75 12 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ACTUAL CASH VALUE LOSS SETTLEMENT WINDSTORM OR HAIL LOSSES TO ROOF SURFACING

### CONDITIONS

This endorsement modifies the loss settlement condition in the policy form with respect to a covered loss for roof surfacing caused by the peril of windstorm or hail. Such loss will be subject to actual cash value loss settlement. Therefore, the loss settlement conditions that pertain to "repair or replacement cost without deduction for depreciation" are changed as noted below:

### E. Loss Settlement

1. In Forms DP 00 02 and DP 00 03:

    a. Paragraph **1.c.** is deleted and replaced by the following:

    **c.** Structures, including their roof surfacing, that are not buildings; and

    b. The following is added to Paragraph **1.:**

    **d.** Roof surfacing on structures that are buildings if a loss to the roof surfacing is caused by the peril of windstorm or hail;

    c. In Paragraph **2.** the introductory statement "Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following": is deleted and replaced by the following:

    2. Buildings under Coverage A or B, except for their roof surfacing if the loss to the roof surfacing is caused by the peril of windstorm or hail, at replacement cost without deduction for depreciation, subject to the following:

2. In Form DP 00 01 when DP 00 08 is attached:

    a. Paragraph **1.c.** is deleted and replaced by the following:

    **c.** Structures, including their roof surfacing, that are not buildings; and

    b. The following is added to Paragraph **1.:**

    **d.** Roof surfacing on structures that are buildings if a loss to the roof surfacing is caused by the peril of windstorm or hail;

    c. In Paragraph **2.** the introductory statement "Buildings under Coverage A or B" is deleted and replaced by the following:

    2. Buildings under Coverage A or B, except for their roof surfacing if the loss to the roof surfacing is caused by the peril of windstorm or hail;

All other provisions of this policy apply.



POLICY NUMBER: DP3 -002758207
INSURED NAME:    RENEE MARTIN
AGENT NUMBER:   006-7859 -

HOMEOWNERS
DW 04 20 12 05

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITED REPLACEMENT COST FOR
# COVERAGE A – DWELLING
### FORM DP 00 03

### (APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS)

### ●SCHEDULE*

Additional Amount Of Insurance:

          %

The Additional Amount Of Insurance is determined by multiplying the Coverage A limit of liability shown in the Declarations by the percentage amount shown above.

*Entry may be left blank if shown elsewhere in this policy for this coverage.

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

A. If you have:

  1. Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

     a. The property evaluations we make; and

     b. Any increases in inflation; and

  2. Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;

The provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

B. If there is a loss to the building insured under Coverage A that exceeds the Coverage A limit of liability shown in the Declarations, for the purpose of settling that loss only:

  1. We will provide an additional amount of insurance, up to the amount described in the Schedule above; and

2. Section I – Condition E. Loss Settlement Paragraph 2. is deleted and replaced by Paragraphs 2., 3., and 4. as follows:

  2. The building insured under Coverage A at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

     a. The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

     b. The necessary amount actually spent to repair or replace the damaged building; or

     c. The limit of liability under this policy that applies to the building, plus any additional amount provided by this endorsement.

If the building is rebuilt at a new premises, the cost described in a. above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

3. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

4. You may disregard the replacement cost loss settlement provisions and make claim under this policy for the actual cash value for loss to the building. You may then make claim for replacement cost value according to the provisions of Section I – Condition E, provided that you:

   a. complete the actual repair or replacement of the damaged part of the property within 12 months from the date that we make our first payment to you towards the actual cash value; and

   b. notify us of your claim within 30 days after the work has been completed.

   Prior to the deadline, we may grant you extensions of up to six months to complete the work on a showing of good cause.

5. If the loss relates to a "state of emergency", as defined in Section 8558 of the Government Code, Paragraph 4 does not apply. In that event, you may disregard the replacement cost loss settlement provisions and make claim for the actual cash value for loss to the building. You may then make claims for replacement cost value according to the provisions of Section I – Condition E, provided that you:

   a. complete the actual repair or replacement of the damaged part of the property within 24 months from the date that we make our first payment to you towards the actual cash value; and,

   b. notify us of your claim within 30 days after the work has been completed.

   Prior to the deadline, we may grant you extensions of up to six months to complete the work on a showing of good cause.

All other provisions of this policy apply.

DW 04 20 12 05     Includes copyrighted material of Insurance Services Office, With Its Permission Copyright, Insurance Services Offices, Inc., 1999

INSURED COPY



POLICY NUMBER: DP3 -002758207
INSURED NAME:   RENEE MARTIN
AGENT NUMBER:  006-7859 -

**PERSONAL LIABILITY**
**DL 01 04 05 04**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – CALIFORNIA

**PERSONAL LIABILITY ADDITIONAL POLICY CONDITIONS**

**E. Cancellation**

Paragraphs **2.c., 2.d.** and **4.** are deleted and replaced by the following:

  **c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may **cancel, unless prohibited by law**, if there has been:

    **(1)** Conviction of a crime having as one of its necessary elements an act increasing the hazard insured against; or

    **(2)** Discovery of fraud or material misrepresentation by:

      **(a)** The named insured or a representative of the named insured in obtaining this policy; or

      **(b)** The named insured in pursuing a claim under this policy;

    **(3)** Discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or

    **(4)** Physical changes in the property insured against which result in the property becoming uninsurable.

    This can be done by notifying you at least 30 days before the date cancellation takes effect.

  **d.** When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by letting you know at least 45 days before the date cancellation takes effect.

  **4.** If we cancel this policy, the return premium will be refunded within 25 days after the effective date of cancellation. When you request cancellation, the return premium will be refunded within a reasonable time after the date cancellation takes effect.

The following Condition is added:

**F. Nonrenewal**

  **1.** We may elect not to renew this policy, subject to the provisions of **2.** below. We may do so by delivering to you at your mailing address shown in the Declarations, written notice at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

  **2.** We will not refuse to renew this policy:

    **a.** Solely on the grounds that a claim is pending under the policy; or

    **b.** Solely on the basis of the age of a person insured under this policy; or

    **c.** If we are required by law to offer a renewal.

  **3.** If this policy is written for a period of less than one year, we agree not to refuse to renew except at the end of an annual period commencing with the original or renewal effective date.

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Offices, Inc., With Its Permission Copyright, Insurance Services Offices, Inc., 2004

INSURED COPY


POLICY NUMBER: DP3 -002758207
INSURED NAME:    RENEE MARTIN
AGENT NUMBER:    006-7859 -

**PERSONAL LIABILITY
DL 24 02 12 05**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PERSONAL LIABILITY
# ADDITIONAL POLICY CONDITIONS

The following conditions are added to this policy:

### A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

### B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

### C. Assignment

Assignment of this policy will not be valid unless we give our written consent.

### D. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises;" and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

### E. Cancellation

1. You may cancel this policy by calling or writing us, and stating the future date that the cancellation is to be effective.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 20 days before the date cancellation takes effect.

   c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (1) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      (2) if the risk has changed substantially since the policy was issued.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**The following Provision is added under Section II-Conditions, as follows:**

**L. Changes**

This policy and the Declarations include all the agreements between you and us relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary we will make the adjustment as of the effective date of the change. If the adjustment results in a refund, we may apply it to any premium balance owed on this policy, whether or not then due under our billing plan.

DL 24 02 12 05

Includes copyrighted material of Insurance Services Offices, Inc., With Its Permission Copyright, Insurance Services Offices, Inc., 2002

INSURED COPY



POLICY NUMBER: DP3 -002758207
INSURED NAME: RENEE MARTIN
AGENT NUMBER: 006-7859 -

**PERSONAL LIABILITY**
DL 24 11 12 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PREMISES LIABILITY
### (Non-Owner Occupied Dwelling)

**SCHEDULE***

| Location* |
|---|
|  |

Number of Families*

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**DEFINITIONS**

Definition **8.** "Insured location" is extended to include the premises shown in the Schedule above.

**LIABILITY COVERAGES**

Coverage **E** – Personal Liability and Coverage **F** – Medical Payments To Others are restricted to apply only with respect to "bodily injury" and "property damage" arising out of the ownership, maintenance, occupancy or use of the premises shown in the schedule above.

**EXCLUSIONS**

Exclusion **E.2.** does not apply to the premises shown in the Schedule.

All other provisions of this policy apply.


POLICY NUMBER: DP3 -002758207
INSURED NAME : RENEE MARTIN
AGENT NUMBER : 006-7859 -

IL N 018 09 03

# CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.


## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WORKERS COMPENSATION RESIDENCE EMPLOYEES – CALIFORNIA

**A. Agreement**

We agree, with respect to "residence employees":

**Under Coverage I**

To pay when due all benefits required of an "insured" by the California Workers' Compensation Law; and

**Under Coverage II**

To pay on behalf of an "insured" all damages for which the "insured" is legally liable because of "bodily injury" sustained by a "residence employee". The "bodily injury" must be caused by accident or disease and arise out of and in the course of employment by the "insured" while:

1. In the United States of America, its territories or possessions, or Canada, or

2. Temporarily elsewhere if the "residence employee" is a citizen or resident of the United States or Canada.

Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

**B. Who is Covered**

A "residence employee" is covered if during the 90 calendar days immediately before the date of injury the employee has:

1. Actually been engaged in such employment by the "insured" for no less than 52 hours, and

2. Earned no less than one hundred dollars ($100) in wages.

**C. Application of Coverage**

This insurance applies only to "bodily injury" which occurs during the policy period. If the "bodily injury" is a disease, it must be caused or aggravated by the conditions of the "residence employee's" employment by the "insured".

**D. Policy Provisions**

This insurance is subject to all the provisions of this endorsement and the following provisions of this policy:

1. Under Conditions:

C. Duties After "Occurrence".

F. Suit Against Us.

J. Subrogation.

2. Under Additional Policy Conditions:

B. Waiver or Change of Policy Provisions.

C. Assignment.

E. Cancellation.

3. Our agreement to defend an "insured" as provided under **Coverage E – Personal Liability**.

4. Under Additional Coverages:

A. Claim Expenses.

B. First Aid Expenses.

5. The definitions of "bodily injury", "business", "insured" and "residence employee".

**E. Additional Provisions Applicable to Coverage I**

The following provisions are applicable to Coverage I:

1. We shall be directly and primarily liable to any "residence employee" of an "insured" entitled to the benefits of the California Workers' Compensation Law.

2. As between the "residence employee" and us, notice to or knowledge of the occurrence of the injury on the part of an "insured" will be deemed notice or knowledge on our part.

3. The jurisdiction of an "insured" will, for the purpose of the law imposing liability for compensation, be our jurisdiction.

4. We will be subject to the orders, findings, decisions or awards rendered against an "insured", under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of this policy.

This policy shall govern as between an "insured" and us as to payments by either in discharge of an "insured's" liability for compensation.

**5.** The "residence employee" has a first lien upon any amount which we owe you on account of this insurance. In case of your legal incapacity or inability to receive the money and pay it to the "residence employee", we will pay it directly to the "residence employee". Your obligation to the "residence employee" will be discharged to the extent of such payment. F.

## Limits of Liability Coverage II

Our total limit of liability will not exceed $100,000 for all damages because of "bodily injury":

**1.** Sustained by one or more "residence employees" in any one accident; or

**2.** Caused by disease and sustained by a "residence employee".

Our total limit of liability will not exceed $500,000 for all damages arising out of "bodily injury" by disease regardless of the number of "residence employees" who sustain "bodily injury" by disease.

### G. Other Insurance

This insurance does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies

### H. Conformity to Statute

Terms of this insurance which are in conflict with the California Workers' Compensation Law are amended to conform to that law.

### I. Exclusions

This policy does not apply:

**1.** To liability for additional compensation imposed on an "insured" under Sections 4553 and 4557, Division IV, Labor Code of the State of California, because of the serious and willful misconduct of an "insured," or because of "bodily injury" to an employee under 16 years of age and illegally employed at the time of injury;

**2.** To liability for "bodily injury" arising out of or in connection with a "business" engaged in by an "insured".

**3.** Under Coverage II:

**a.** To liability assumed by the "insured" under any contract or agreement.

**b.** To "bodily injury" by disease unless a written claim is made or suit brought against the "insured" within 36 months after the end of the policy period.

**c.** To any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc.. 2004



**AAA Insurance**

ACA Insurance Company, P.O. Box 5823 Irvine, CA 92616-5823

(800) 207-3618

POLICY NUMBER: DP3 -002758207
INSURED NAME:   RENEE MARTIN
AGENT NUMBER:   006-7859 -

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

### SECTION I – PROPERTY COVERAGES

The following Coverage is added to **Other Coverage** (Paragraph E. in DP 00 01):

**10. "Fungi", Wet Or Dry Rot, Or Bacteria**

  **a.** $10,000 is the most we will pay for:

    **(1)** The total of all loss payable under Section I – Property Coverages caused by or consisting of "fungi", wet or dry rot, or bacteria;

    **(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

    **(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

    **(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is reason to believe that there is a presence of "fungi", wet or dry rot, or bacteria.

  **b.** The coverage described in **10.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

  **c.** $10,000 is the most we will pay for the total of all loss or costs payable under this Other Coverage regardless of the:

    **(1)** Number of locations insured under this endorsement; or

    **(2)** Number of claims made.

  **d.** If there is covered loss or damage to covered property, not caused, or not consisting of in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Other Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Other Coverage.

This Coverage does not increase the limit of liability applying to the damaged covered property.

(This is Other Coverage 9. in Form DP 00 01.)

### PERILS INSURED AGAINST

In Form DP 00 03, Paragraph A.2.c.(8)(c) is deleted and replaced by the following:

  **(c)** Smog, rust or other corrosion;

(When Endorsement DP 04 65 is attached to this policy, this is Paragraph 2.c.(8)(c)).

### GENERAL EXCLUSIONS

The following exclusion is added:

**10. "Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning, the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This Exclusion does not apply:

  **a.** When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

  **b.** To the extent coverage is provided for in Other Coverages, "Fungi", Wet Or Dry Rot, Or Bacteria Other Coverages under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Includes copyrighted material of Insurance Services Office, With Its Permission Copyright, Insurance Services Offices, Inc., 2002

INSURED COPY



POLICY NUMBER: DP3-002758207
INSURED NAME:    RENEE MARTIN
AGENT NUMBER:   006-7859 -

**DWELLING**
**DW 01 04 12 05**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – CALIFORNIA

### NOTICE

Throughout this policy, the term spouse includes an individual registered under California law as a domestic partner with the "named insured" shown in the Declarations.

### GENERAL EXCLUSIONS

#### 8. Intentional Loss

The following paragraphs are added:

This exclusion does not apply, with respect to loss to covered property caused by fire, to you or any person or organization named as an additional insured, who does not commit or conspire to commit, any act that results in loss by fire. We cover such person or organization only to the extent of that person's or organization's legal interest, but not exceeding the applicable limit of liability.

We may apply reasonable standards of proof to claims for such loss.

(This is Exclusion A.8. in Forms DP 00 01 and DP 00 03.)

### CONDITIONS

Paragraph C. Concealment Or Fraud is replaced by the following:

#### C. Concealment Or Fraud

1. With respect to loss caused by fire, we provide coverage to no person insured under this policy who has:

   (a) Intentionally concealed or misrepresented any material fact or circumstance;

   (b) Engaged in fraudulent conduct;

   (c) Made false statements;

   relating to this insurance.

2. With respect to loss caused by a peril other than fire, we provide coverage to no persons insured under this policy, if, whether before or after a loss, one or more persons insured under this policy have:

   (a) Intentionally concealed or misrepresented any material fact or circumstance;

   (b) Engaged in fraudulent conduct; or

   (c) Made false statements;

   relating to this insurance.

### E. Loss Settlement

Paragraph 2.e. is replaced by the following:

e. You may disregard the replacement cost loss settlement provisions and make claim for the actual cash value for loss to the building. You may then make claim for replacement cost value according to the provisions of this Condition E, provided that you:

   (1) complete the actual repair or replacement of the damaged part of the property within 12 months from the date that we make our first payment to you towards the actual cash value; and

   (2) notify us of your claim within 30 days after the work has been completed.

Prior to the deadline, we may grant you extensions of up to six months to complete the work on a showing of good cause.

Paragraph 2.f. is ADDED as follows:

f. If the loss relates to a "state of emergency", as defined in Section 8558 of the Government Code, paragraph 2.e. does not apply. In that event, you may disregard the replacement cost loss settlement provisions and make claim for the actual cash value for loss to the building. You may then make claim for replacement cost value according to the provisions of this Condition E, provided that you:

   (1) complete the actual repair or replacement of the damaged part of the property within 24 months from the date that we make our first payment to you towards the actual cash value; and,

   (2) notify us of your claim within 30 days after the work has been completed.

Prior to the deadline, we may grant you extensions of up to six months to complete the work on a showing of good cause.

Paragraph **G. Appraisal** is replaced by the following:

### G. Appraisal

If you and we fail to agree on the amount of loss, then, either party may make a written request for an appraisal. However, both parties must agree to the appraisal. In this event, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the two appraisers will select a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will appraise the loss, stating separately the loss to each item. If they fail to agree, they will submit their differences to the umpire. An award in writing, agreed to by any two, will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

(This is Condition H. in Form **DP 00 01.**)

Paragraph **L. Loss Payment** is replaced by the following:

### L. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

1. Reach agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

(This is Condition M. in Form **DP 00 01.**)

### P. Cancellation

Paragraphs **2.b., 2.c., 2.d.,** and **4.** are replaced by the following:

    **b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason, except as provided below **or prohibited by law,** by letting you know at least 20 days before the date cancellation takes effect.

    We may not cancel this policy solely because:

      (1) You accepted an offer of earthquake coverage;

      (2) Corrosive soil conditions exist on the Described Location. This Provision **(b)** applies only if this policy includes one or more of the following, which exclude loss caused by corrosive soil conditions:

        (a) Dwelling Property 3 Special Form; or

        (b) Special Coverage Endorsement; or

      (3) You canceled or did not renew an earthquake policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

      However, we may cancel this policy if you have accepted a new or renewal policy issued by the CEA that included an earthquake policy premium surcharge, but you failed to pay the earthquake policy premium surcharge authorized by the CEA.

    **c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel, **unless prohibited by law,** if there has been:

      (1) Conviction of a crime having as one of its necessary elements an act increasing the hazard insured against; or

      (2) Discovery of fraud or material misrepresentation; by:

        (a) You or your representative in obtaining this insurance; or

        (b) You or your representative in pursuing a claim under this policy; or

      (3) Discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or

      (4) Physical changes in the property insured against which result in the property becoming uninsurable.

      However, we may not cancel this policy solely because corrosive soil conditions exist on the Described Location if this policy includes one or more of the following, which exclude loss caused by corrosive soil conditions:

        (a) Dwelling Property 3 Special Form; or

        (b) Special Coverage Endorsement.

      (5) Acceptance of a new or renewal policy, issued by the CEA that included an earthquake policy premium surcharge, but you failed to pay the earthquake policy premium surcharge authorized by the CEA.

    This can be done by notifying you at least 30 days before the date cancellation takes effect.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

(This is General Exclusion **A.10.** in Forms **DP 00 01** and **DP 00 03.**)

**CONDITIONS**

**A.** Policy Period is deleted and replaced by the following:

**A. Policy Period**

This policy applies only to loss or costs which occur during the policy period.

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Office, With Its Permission Copyright, Insurance Services Offices, Inc., 2002

- **d.** When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 45 days before the date cancellation takes effect.

**4.** If, when we cancel this policy, the return premium is not refunded with the notice of cancellation, we will refund it within 25 days after the date cancellation takes effect. If, when you cancel this policy, the return premium is not refunded when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

(This is Condition **Q.** in Form **DP 00 01.**)

Item **Q. Nonrenewal** is replaced by the following:

**Q. Non-Renewal**

**1.** We may elect not to renew this policy, subject to the provisions of Paragraph **2.** below. We may do so by delivering to you at your mailing address shown in the Declarations, written notice at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**2.** We will not refuse to renew this policy:

- **a.** Solely because you accepted an offer of earthquake coverage.

   However, the following applies only to insurers who are associate participating insurers as established by California Insurance Code Section 10089.16. We may elect not to renew this policy after you have accepted an offer of earthquake coverage if one or more of the following reasons apply:

   **(1)** The non-renewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

   **(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

**(3)** We have:

- **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

- **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

   The Commissioner has approved a plan for the non-renewals that is fair and equitable, and that is responsive to the changes in our reinsurance position;

- **b.** Solely because you cancelled or did not renew an earthquake policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge;

- **c.** Solely because corrosive soil conditions exist on the Described Location. This Provision **(c.)** applies only if this policy includes one or more of the following, which exclude loss caused by corrosive soil conditions:

   **(1)** Dwelling Property 3 Special Form; or

   **(2)** Special Coverage Endorsement.

- **d.** Solely on the grounds that a claim is pending under the policy unless such claim is made under coverage for loss caused by an earthquake; or

- **e.** Solely on the basis of the age of a person insured under this policy.

- **f.** If there is a law that requires we offer a renewal of this policy.

**3.** If this policy is written for a period of less than one year, we agree not to refuse to renew except at the end of an annual period commencing with the original or renewal effective date.

(This is Condition **R.** in Form **DP 00 01.**)

The following Provision is added under Section I-Conditions, as follows:

**AA. Changes**

This policy and the Declarations include all the agreements between you and us relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary we will make the adjustment as of the effective date of the change. If the adjustment results in a refund, we may apply it to any premium balance owed on this policy, whether or not then due under our billing plan.

All other provisions of this policy apply.

INSURED COPY



POLICY NUMBER: DP3 -002758207
INSURED NAME:   RENEE MARTIN
AGENT NUMBER:   006-7859 -

**DWELLING**
**DP 04 22 12 05**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

### SECTION I – PROPERTY COVERAGES

The following Coverage is added to **Other Coverage** (Paragraph E. in DP 00 01):

### 10. "Fungi", Wet Or Dry Rot, Or Bacteria

a. $10,000 is the most we will pay for:

(1) The total of all loss payable under Section I – Property Coverages caused by or consisting of "fungi", wet or dry rot, or bacteria;

(2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is reason to believe that there is a presence of "fungi", wet or dry rot, or bacteria.

b. The coverage described in **10.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

c. $10,000 is the most we will pay for the total of all loss or costs payable under this Other Coverage regardless of the:

(1) Number of locations insured under this endorsement; or

(2) Number of claims made.

d. If there is covered loss or damage to covered property, not caused, or not consisting of in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Other Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Other Coverage.

This Coverage does not increase the limit of liability applying to the damaged covered property.

(This is Other Coverage 9. in Form DP 00 01.)

### PERILS INSURED AGAINST

In Form DP 00 03, Paragraph A.2.c.(8)(c) is deleted and replaced by the following:

(c) Smog, rust or other corrosion;

(When Endorsement DP 04 65 is attached to this policy, this is Paragraph 2.c.(8)(c)).

### GENERAL EXCLUSIONS

The following exclusion is added:

### 10. "Fungi", Wet Or Dry Rot, Or Bacteria

"Fungi", Wet Or Dry Rot, Or Bacteria meaning, the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This Exclusion does not apply:

a. When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

b. To the extent coverage is provided for in Other Coverages, "Fungi", Wet Or Dry Rot, Or Bacteria Other Coverages under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Includes copyrighted material of Insurance Services Office, With Its Permission Copyright, Insurance Services Offices, Inc., 2002

INSURED COPY

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

(This is General Exclusion **A.10.** in Forms **DP 00 01** and **DP 00 03**.)

**CONDITIONS**

A. Policy Period is deleted and replaced by the following:

**A. Policy Period**

This policy applies only to loss or costs which occur during the policy period.

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Office, With Its Permission Copyright, Insurance Services Offices, Inc., 2002

INSURED COPY

# EXHIBIT 2

When Quality Is Most Important
7928 El Reno Avenue, Elverta CA, 95626

CSLB # 411644
(916) 992-1138
www.BassettBuilders.net

(Contractor Copy)

## Contract For Construction
### (Home Improvement)

February 11, 2014

Renee Martin
2428 Covered Wagon Circle
Elverta, CA 95626
tenderly53@yahoo.com
(707) 514-9579

Re:     Rental House Restoration

Dear Ms. Martin:

Thank you for the opportunity to review your rental house restoration project. The following is a home improvement contract to complete the work per your specifications. In addition, miscellaneous other work is to be preformed and has been itemized for your review. The agreement is dated this 11th day of February in the year 2014 by and between Renee Martin (hereinafter referred to as the owner" or "owner's), and Ed Bassett Doing Business As Bassett Building and Construction (hereinafter referred to as the contractor). The contractor agrees to complete the project in a diligent and workmanlike manner.

Scope of the Project:
The project involves the restoration of the property and includes work inside and outside of the residence. The residence is a single story, single family dwelling, with 3 bedrooms and 1 ½ bathrooms. The exterior work to be completed involves replacing a portion of the exterior plywood siding and adjacent wood trim at the rear of the residence. The effected areas will be painted to match the existing color as close as possible. New window screens will be installed where the existing are damaged or missing. The interior work involves demolition and hauling of the damaged or unusable fixtures. The carpeting was removed by the owner prior to the beginning of work due to the strong animal odor and significant staining. Some 12" x 12" asphaltic tile flooring remains and will be tested for asbestos prior to removal. Due to the type and configuration of the tile itself, it is unlikely that the asphalt tile or tile adhesive contains asbestos. However, if the asphalt tiles or tile adhesive contains asbestos the additional costs for proper disposal will be quoted prior to the work being completed. The interior ceiling has a sprayed on acoustical material surface and will remain intact. Damage to the sheetrock walls has occurred and will be repaired to match the existing undamaged walls as close as possible. The acoustical ceiling and all wall surfaces will be sealed with a pigmented shellac prior to the application a latex based paint. The property falls under the Federal EPA, RRP rule for lead paint testing before any work begins. The lead test has not been conducted at this time and it is unlikely that your home contains lead based paints. Although, if lead based paints are present the abatement costs be estimated prior to the work being completed. I am a EPA certified renovator and can complete the work if lead paint is found.

Although, it is not suspected, if structural damage requiring repair has occurred, that is not visible or is concealed, the additional costs will be reflected in an amendment to the original contract. Owner agrees to provide a safe location inside the residence to store materials during the duration of the project. The owner agrees that during demolition the debris dumpster may need to be placed clear of the public way, preferably in the driveway.

Page 1 of 13

# **B**ASSETT

When Quality Is Most Important

7928 El Reno Avenue, Elverta CA, 95626

CSLB # 411644

(916) 992-1138

# **B**UILDING and construction

www.BassettBuilders.net

The project has been estimated with the use of written plans and without written specifications. All construction will be installed according to the International Building Code (I.B.C.) and local regulation. Permits, fees and inspections are the responsibility of the owner. For the purpose of this estimate some assumptions are made as to the quality and brand desired. An itemized *budget* amount has been estimated for those materials that were not specified. The budget amounts estimated are of above average builders quality. Your selections for these items will determine the actual cost.

**Schedule of Materials and Labor**

| | | | |
|---|---|---|---|
| Subcontract - RRP Lead Test | 1 ea | 200.00 | 200.00 |
| Subcontract - Asbestos flooring and flooring adhesive test. | 1 ea | 325.00 | 325.00 |
| Subcontract - Replace 15'2" sectional garage door, match existing quality, white color. | 1 ea | 759.87 | 759.87 |
| Interior and exterior demolition of the existing siding and trim, garage door, interior doors and trim, baseboard, closet poles and shelf, vanity and counter tops, kitchen counter, damaged sheetrock, and remaining carpet pad. | 28 hrs | 75.00 | 2100.00 |
| Dumpster service and hauling. | 1 ea | 965.00 | 965.00 |
| Replace damaged or missing window screens throughout to match existing as close as possible. | 3 hrs | 75.00 | 225.00 |
| Window screens, aluminum screen, brite aluminum frame. | 1 ea | 287.39 | 287.39 |
| Remove and replace approx. 68' lf of 16" OC, wide groove composite panel siding and wood trim. | 22 hrs | 75.00 | 1650.00 |
| Misc. wide groove composite panel siding, pre-primed wood trim, installation supplies and materials. | 1 ea. | 1566.31 | 1566.31 |
| Remove existing exterior water heater access door, remove and reinstall the existing water heater and flue, repair damaged sheetrock in water heater closet. Install new exterior door and trim. | 10.5 hrs | 75.00 | 787.50 |
| Misc. water heater supply line, flue collar, 2 door vents, sheetrock, installation supplies and materials. | 1 ea | 557.88 | 557.88 |
| Paint new exterior siding and trim to match existing as close as possible with two coats, Kelly Moore, Premium grade low sheen, exterior latex paint. | 12 hrs | 75.00 | 900.00 |
| Misc. Kelly Moore, Premium grade low sheen, exterior latex paint, protective materials, installation supplies and materials. | 1 ea. | 296.56 | 296.56 |
| Remove and replace one fence board in the backyard fence. | .5 hrs | 75.00 | 37.50 |
| One 1" x 6" x 72" cedar fence board, misc. installation supplies. | 1 ea | 9.45 | 9.45 |

# B ASSETT
# B UILDING and construction

When Quality Is Most Important
7928 El Reno Avenue, Elverta CA, 95626

CSLB # 411644
(916) 992-1138

www.BassettBuilders.net

| | | | |
|---|---|---|---|
| Scrape all interior concrete floors clean. Remove all existing floor pad, tack strip, vinyl floor covering, asphalt floor tiles. | 10 hrs | 75.00 | 750.00 |
| Apply Bio-enzyme solution to garage and interior concrete floors in two saturating coats to deodorize animal urine/feces. | 13.5 hrs | 75.00 | 1012.50 |
| Urine Bio-Enzyme odor eliminator, misc. application supplies, and cleaning materials. | 1 ea. | 361.93 | 361.93 |
| Apply solvent based concrete sealer to all interior concrete floors. | 13 hrs | 75.00 | 975.00 |
| Solvent based concrete sealer, misc. thinners, installation supplies and materials. | 1 ea | 339.82 | 339.82 |
| Install five pre-hung, hollow core, interior doors, and trim to match existing as close as possible. | 10.5 hrs | 75.00 | 787.50 |
| Five pre-hung, hollow core, interior doors, trim, misc. supplies and installation materials. | 1 ea | 563.14 | 563.14 |
| Install five builders quality, door hardware. | 2.5 hrs | 75.00 | 187.50 |
| Five builders quality, door hardware sets. | 1 ea | 159.10 | 159.10 |
| Install 3 ½" MDF paint grade baseboard throughout. | 7.5 hr | 75.00 | 562.50 |
| Misc. 3 ½" MDF paint grade baseboard, supplies and installation materials. | 1 ea | 207.38 | 207.38 |
| Replace all electrical switches, outlets, and electrical covers to match existing. | 5 hrs | 75.00 | 375.00 |
| Misc. electrical switches, outlets, and electrical covers to match existing, misc. electrical supplies and installation materials. | 1 ea | 186.59 | 186.59 |
| Install two FirstAlert smoke detectors (one ionization, one photoelectric), Install one Kiddie carbon monoxide (CO) detector. | 1.5 hrs | 75.00 | 112.50 |
| Two FirstAlert smoke detectors (one battery ionization, one 110v photoelectric), One Kiddie battery carbon monoxide (CO) detector. | 1 ea | 91.99 | 91.99 |
| Install four Harbor Breeze 52" white ceiling fans with light kit. | 4 hrs | 75.00 | 300.00 |
| Four Harbor Breeze 52" white ceiling fans with light kit, misc. installation materials and supplies. | 1 ea. | 741.99 | 741.99 |
| Install seven horizontal mini-blinds on all windows to replace existing blinds. | 3.5 hrs | 75.00 | 262.50 |
| Seven Levolor 1" aluminum mini blinds, misc. installation supplies | 1 ea | 256.01 | 256.01 |

# BASSETT

## BUILDING and construction

When Quality Is Most Important

7928 El Reno Avenue, Elverta CA, 95626

CSLB # 411644

(916) 992-1138

www.BassettBuilders.net

| | | | |
|---|---|---|---|
| and materials. | | | |
| Install four closet pole and shelf to match existing. | 4.5 hrs | 75.00 | 337.50 |
| Misc. MDF millwork for four closet poles and shelves, misc. installation materials and supplies. | 1 ea | 181.29 | 181.29 |
| Install four 96" tall vinyl closet doors to match existing as close as possible. | 9.5 hrs | 75.00 | 712.50 |
| Four SGDC 96" tall vinyl sliding closet doors to match existing, misc. installation materials and supplies. | 1 ea | 1101.80 | 1101.80 |
| Install 32" bathroom vanity and top. | 3.5 hrs | 75.00 | 262.50 |
| One Glacier Bay Cordova vanity with white cultured marble top, misc. installation materials and supplies. | 1 ea | 454.89 | 454.89 |
| Install new Moen builders quality faucet set, new plastic trap and drain. | 1 hr | 75.00 | 75.00 |
| Moen bathroom faucet, brite finish, misc. plumbing materials and installation supplies. | 1 ea | 88.58 | 88.58 |
| Install two bathroom towel bar sets. | 1 hr | 75.00 | 75.00 |
| Two Delta Greenwich towel bar sets in bathrooms, misc. installation supplies and materials. | 1 ea | 74.74 | 74.74 |
| Subcontract - HVAC maintenance service, install new Honeywell, 5 day, programmable thermostat. | 1 ea | 275.00 | 275.00 |
| Install new 60" American Standard, enameled steel tub. | 6.5 hrs | 75.00 | 487.50 |
| 60" American Standard white enamel steel tub, misc. trap, installation materials and supplies. | 1 ea | 488.99 | 488.99 |
| Subcontract - supply and install 60" laminated plastic tub surround. Owner to select color. | 1 ea | 650.00 | 650.00 |
| Install standard builders quality 60" tempered glass tub/shower enclosure, misc. installation materials and supplies. | 4 hrs | 75.00 | 300.00 |
| 60" Sterling tub/shower enclosure, with obscured tempered glass, and brite metal finish. | 1 ea | 337.45 | 337.45 |
| Refinish front wood door. Strip, sand, and stain wood front door. Owner to select stain color. Door to be finished inside and outside with three coats of Oxford, semi-gloss, architectural urethane. | 7.5 hrs | 75.00 | 562.50 |
| Oxford, semi-gloss, architectural urethane, misc. stripping, sand, | 1 ea | 140.55 | 140.55 |

Page 4 of 13

# **B**ASSETT
# **B**UILDING and construction

When Quality Is Most Important

7928 El Reno Avenue, Elverta CA, 95626

CSLB # 411644

(916) 992-1138

www.BassettBuilders.net

| | | | |
|---|---|---|---|
| walls, bathroom ceilings and walls with Kelly Moore, semi-gloss, latex paint, one color to match walls and ceiling throughout. | | | |
| Zinzer pigmented shellac, Kelly Moore, Premium grade flat, interior latex paint, Kelly Moore, Premium grade, semi-gloss latex paint. Misc. paint materials, protective materials and supplies. | 1 ea | 313.36 | 313.36 |
| De-gloss, sand, and paint kitchen cabinets with two coats of Kelly Moore, Premium grade semi-gloss, latex paint in one color, install new hinges. Owner to select color. | 7.5 hrs | 75.00 | 525.00 |
| Kelly Moore, Premium grade, semi-gloss latex paint. Misc. paint materials, protective materials and supplies. New cabinet hinges. | 1 ea | 85.55 | 85.55 |
| *Budget* - Install approximately 110 yards of builders quality carpeting with Contractor 6lb, 7/16, carpet pad. | 1 ea. | 5116.32 | 4516.32 |
| *Budget* - Install approximately 40 yards of builders quality sheet vinyl in 2 bathrooms, kitchen, dining, and entry areas. | 1 ea. | 3158.66 | 3026.66 |
| | | | |
| **CONTRACT PRICE**               (Due upon completion) | | | 41504.63 |

APPROXIMATE START DATE: The project is scheduled to begin on or about February 17th , 2014.
Any items not listed are expressly excluded from this contract.
Substantial commencement will have occurred after the first, eight hour, work day is completed.
Notice: Failure of the contractor without lawful excuse to substantially commence work within 20 days from the approximate date specified in the contract when work will begin is a violation of the Contractors License Law.
APPROXIMATE COMPLETION DATE: The project is scheduled for completion on or about March 24th, 2014
Venue is agreed to be Sacramento County, California.

We care about your home so during the construction process it will be necessary to apply protective plastic in some areas to minimize the migration of dust and paint throughout the residence. The remainder of the project plastic may be necessary only intermittently. In any case, we will always protect the finished materials and flooring with tarps that will be removed or cleaned each day after work is completed. We are aware of the intrusion that a project of this type can be to your daily routine and will make every attempt to cause the least disruption possible by cleaning up after ourselves each day. Our work schedule is generally Monday through Friday, 8:00 am to 5:00 pm, however, in an attempt to complete your project timely we may ask to work earlier and some weekends. We will always make sure this request meets with your approval.

Progress payments will be invoiced from the schedule of materials and labor, as work is completed, and final payment is due upon completion of the project.

When Quality Is Most Important

7928 El Reno Avenue, Elverta CA, 95626

CSLB # 411644

(916) 992-1138

www.BassettBuilders.net

**You are entitled to a completely filled in copy of this agreement, signed by both you and the contractor, before any work may be started.**

### DOWN PAYMENT

**The Down Payment May Not Exceed $1,000 Or 10 Percent Of The Contract Price, Whichever Is Less.** $00.00 **(initial)**

### SCHEDULE OF PROGRESS PAYMENTS

**The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment. IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED, OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWN PAYMENT.**

### LIST OF DOCUMENTS TO BE INCORPORATED INTO THE CONTRACT

### Note about Extra Work and Change Orders

Extra Work and Change Orders become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments.

### Performance of Extra or Change-order Work Notice

(A) A statement telling the buyer that a contractor is not required to perform additional work or changes without written approval in a "Change Order" before any of the new work is started. (B) A statement informing the buyer that extra work or a change order is not enforceable against a buyer unless the change order also identifies all of the following in writing prior to the commencement of any work covered by the new change order:

(I) The scope of work encompassed by the order.

(ii) The amount to be added or subtracted from the contract.

(iii) The effect the order will make in the progress payments or the completion date.

© A statement informing the buyer that the contractor's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.



# **B** ASSETT
When Quality Is Most Important
7928 El Reno Avenue, Elverta CA, 95626

CSLB # 411644
(916) 992-1138

# **B** UILDING and construction

www.BassettBuilders.net

### Commercial General Liability Insurance (CGL)

Bassett Building and Construction carries commercial general liability insurance written by Skyles insurance company. You may call Skyles insurance company at (888) 900-9989 or (916) 361-9821 to check the contractor's insurance coverage. In addition, prior to the start of work a certificate of general liability insurance coverage will be provided to you.

### Workers' Compensation Insurance

Bassett Building and Construction carries workers' compensation insurance for all employees. In addition, prior to the start of work a certificate of work compensation insurance will be provided at your request.

### Mechanics' Lien Warning

Anyone who helps improve your property, but who is not paid, may record what is called a mechanics' lien on your property. A mechanics' lien is a claim, like a mortgage or home equity loan, made against your property and recorded with the county recorder.

Even if you pay your contractor in full, unpaid subcontractors, suppliers, and laborers who helped to improve your property may record mechanics' liens and sue you in court to foreclose the lien. If a court finds the lien is valid, you could be forced to pay twice or have a court officer sell your home to pay the lien. Liens can also affect your credit.

To preserve their right to record a lien, each subcontractor and material supplier must provide you with a document called a '20-day Preliminary Notice.' **This notice is not a lien. The purpose of the notice is to let you know that the person who sends you the notice has the right to record a lien on your property if he or she is not paid.**

**BE CAREFUL.** The Preliminary Notice can be sent up to 20 days after the subcontractor starts work or the supplier provides material. This can be a big problem if you pay your contractor before you have received the Preliminary Notices. You will not get Preliminary Notices from your prime contractor or from laborers who work on your project. The law assumes that you already know they are improving your property.

**PROTECT YOURSELF FROM LIENS.** You can protect yourself from liens by getting a list from your contractor of all the subcontractors and material suppliers that work on your project. Find out from your contractor when these subcontractors started work and when these suppliers delivered goods or materials. Then wait 20 days, paying attention to the Preliminary Notices you receive.

Page 8 of  13



| | |
|---|---|
| When Quality Is Most Important | CSLB # 411644 |
| 7928 El Reno Avenue, Elverta CA, 95626 | (916) 992-1138 |
| | www.BassettBuilders.net |

**BASSETT BUILDING** and construction

**PAY WITH JOINT CHECKS.** One way to protect yourself is to pay with a joint check. When your contractor tells you it is time to pay for the work of a subcontractor or supplier who has provided you with a Preliminary Notice, write a joint check payable to both the contractor and the subcontractor or material supplier.

For other ways to prevent liens, visit CSLB's website at www.cslb.ca.gov or call CSLB at 1-800-321-CSLB (2752).

**Remember, if you do nothing, you risk having a lien placed on your home**. This can mean that you may have to pay twice, or face the forced sale of your home to pay what you owe."

### INFORMATION ABOUT THE
### CONTRACTORS STATE LICENSE BOARD (CSLB)

CSLB is the state consumer protection agency that licenses and regulates construction contractors. Contact CSLB for information about the licensed contractor you are considering, including information about disclosable complaints, disciplinary actions and civil judgments that are reported to CSLB. Use only licensed contractors. If you fi le a complaint against a licensed contractor within the legal deadline (usually four years), CSLB has authority to investigate the complaint. If you use an unlicensed contractor, CSLB may not be able to help you resolve your complaint. Your only remedy may be in civil court, and you may be liable for damages arising out of any injuries to the unlicensed contractor or the unlicensed contractor's employees.

**For more information:**
**VISIT** CSLB's website at www.cslb.ca.gov
**CALL** CSLB at 1-800-321-CSLB (2752)
**WRITE** CSLB at P.O. Box 26000, Sacramento, CA 95826"

### Demolition or Replacement Parts
**The owner agrees that all demolished and removed materials become the property of the contractor to salvage or dispose of at the contractors discretion.**

**The law requires that the contractor offer the consumer any parts that were replaced during the service call. If they do not want the parts, they initial the check box labeled 'OK for contractor to take replaced parts. (OK)** ▆▆▆▆

### CANCELLATION NOTICE
**The law requires that the contractor give you a notice explaining your right to cancel. Initial the check box if the contractor has given you a 'Notice of the Three-Day Right to Cancel. Located on the two last pages of the contract. (Initial)** ▆▆▆▆



**B**ASSETT
**B**UILDING and construction

When Quality Is Most Important
7928 El Reno Avenue, Elverta CA, 95626

CSLB # 411644
(916) 992-1138

www.BassettBuilders.net

### "ARBITRATION OF DISPUTES

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE BUSINESS AND PROFESSIONS CODE OR OTHER APPLICABLE LAWS. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

(initial) █████████

Page 10 of 13



**B**ASSETT
**B**UILDING and construction

When Quality Is Most Important
7928 El Reno Avenue, Elverta CA, 95626

CSLB # 411644
(916) 992-1138

www.BassettBuilders.net

Owner shall pay Contractor the fixed sum of $ 41,504.63 (the "Contract Price") for the work to be performed under this Contract, subject to additions and deductions pursuant to change orders agreed upon in writing by the parties, and subject to "allowances

Bassett Building and Construction

Submitted_____        Date_____
        Contractor, Ed Bassett

Property Owner

Accepted ███████████████████████        Date ████████████
        Owner, Renee Martin

Page 11 of 13

3/3/2014 5:08 PM

1 of 1

# EXHIBIT 3

July 11, 2014

ACA Insurance Company
P.O. Box 24523
Oakland, CA 94623-1523

## LETTER OF DEMAND

Re: Loss December 2, 2013
Location: 2428 Covered Wagon Cir.
Elverta, CA 95626
Claim No: 850641

TO: Stephanie Bailey, AAA Supervisor
Brett Adams, Supervisor of Ms. Bailey
Fax No: 877-548-1610

Dear Ms. Bailey:

Reference is made regarding the above claim # 850641 in which I have sustained substantial damages to my rental property. This letter is to put you on notice that this claim was filed on December 2, 2013 and it has ***NOT*** been settled, as of this date. In order to expedite time, this letter is being facsimiled to Brett Adams at the number listed above and emailed to Ms. Bailey at Stephanie.bailey@csaa.com.

I have submitted to your company the damages sustained. The damages identified by my builder were submitted to your company by me. The builder has thoroughly identified the work that needed to be performed in order to restore the property back to habitable conditions, in which this company is liable.

There have been damages in the amount of $42,505.00, identified by my builder; which are the "***NECESSARY***" repairs to restore the property back to a habitable condition. [This amount does not include the heating and air conditioning system]. If there is a problem with the HVAC system, the builder has included in his estimate the amount to check the system and not the costs, if the system was also vandalized. These damages are covered under the policy. In addition to these covered damages, the policy also has loss rents up to the amount of $41,288.00.

I got possession of the property on December 2, 2013. Because of substantial

July 11, 2014

ACA Insurance Company
P.O. Box 24523
Oakland, CA 94623-1523

## LETTER OF DEMAND

Re: Loss December 2, 2013
Location: 2428 Covered Wagon Cir.
Elverta, CA 95626
Claim No: 850641

TO: Stephanie Bailey, AAA Supervisor
Brett Adams, Supervisor of Ms. Bailey
Fax No: 877-548-1610

Dear Ms. Bailey:

Reference is made regarding the above claim # 850641 in which I have sustained substantial damages to my rental property. This letter is to put you on notice that this claim was filed on December 2, 2013 and it has ***NOT*** been settled, as of this date. In order to expedite time, this letter is being facsimiled to Brett Adams at the number listed above and emailed to Ms. Bailey at Stephanie.bailey@csaa.com.

I have submitted to your company the damages sustained. The damages identified by my builder were submitted to your company by me. The builder has thoroughly identified the work that needed to be performed in order to restore the property back to habitable conditions, in which this company is liable.

There have been damages in the amount of $42,505.00, identified by my builder; which are the "***NECESSARY***" repairs to restore the property back to a habitable condition. [This amount does not include the heating and air conditioning system]. If there is a problem with the HVAC system, the builder has included in his estimate the amount to check the system and not the costs, if the system was also vandalized. These damages are covered under the policy. In addition to these covered damages, the policy also has loss rents up to the amount of $41,288.00.

I got possession of the property on December 2, 2013. Because of substantial

damages, I filed a claim with AAA. As of this date, AAA paid loss rents from December 2, 2013 through April 2, 2014.

Ms. Bailey, stated that she will pay additional loss rents if necessary, if this the property is still not completed by April 2, 2014.

AAA paid only $7,812.41 in damages. This amount is far short of the damages to restore the property back to be able to rent; and which AAA is liable. According to the builder and damages covered from the policy $42,505.00 minus $7,812.41 = $34,689.59 **[SHORT]**. AAA refuses to give me the break-down as to what the amount for damages covered which items. Still today, that information remains unknown to me.

I am willing to accept to settle this claim as follows: $25,000 for property damages, instead of the $34,689.59 owed that AAA is liable for. This amount is being offered, as long as there are no problems with the HVAC system. [Heating and Air Condition System]. In addition to the $25,000, I demand those loss rents, that AAA is liable and owed to me from April 3 through September 30, 2014; which will allow the builder time to restore the property back to be able to be rented. The approximate amount for this cost of loss rents equals to the approximate amount of $6,858.00. The total sum for these amounts are: **$31,858.00**. This offer to settle is open until July 18, 2014.

It is clear to me, that AAA does ***NOT*** have any intention to settle this claim. I have been more than reasonable in meeting your demands. However, it comes to a point where further action is necessary.

**THEREFORE,** if this claim is not settled by July 18, 2014, I will institute a lawsuit for breach of contract and bad faith shortly thereafter July 18, 2014. Furthermore, there is no need to place any further demands on me and continue the harassment. AAA has caused me to suffer mentally by its conduct in settling this claim. Also, I have suffered economic damages regarding this property because it is a rental investment and because of the damages with the property, it cannot be rented in its condition.

Not only will I seek the entire damages, I will also seek punitive damages for your company causing me "Intentional Infliction of Emotional Distress", for not settling this claim fairly and promptly. In addition, I will seek all legal costs and damages associated from this lawsuit. I will seek any and all other tort claims in which I am entitled to for the negligence conduct of AAA.

**NOTICE IS HEREBY GIVEN THAT** unless the claim is settled by July 18, 2014, I intend to institute legal proceedings against this company for breaching its duty

of good faith to settle this claim in a manner based on terms of the contract. Pursuant to the policy, I have complied with all *"__REASONABLE__"* terms and conditions and AAA is breaching its duty of obligation.

Very truly yours,


*Renee' L. Martin, JD*
Renee' L. Martin, JD
Jurist Doctor at Law

# EXHIBIT 4

  **ACA Insurance Company**
P.O. Box 24523, Oakland, CA 94623-1523



**RENEE MARTIN**
PO Box
10135
American Canyon  CA  94503

| DATE | DESCRIPTION | AMOUNT | ACCT. NO. | AMOUNT |
|------|-------------|--------|-----------|--------|
| 12/12/13 | 20  Dwelling Payment - Homeowners | | | |
| | 713  A   001  MARTIN, RENEE | 2,490.64 | RTH | |
| | | .00 | | |
| | | .00 | | |
| | | | 8765215431 | |
| | | | **TOTAL** | 2,490.64 |

| CHECK NO. | 960717 | |
|-----------|--------|--|
| CLAIM NO. 0000850641 | POLICY NO. DP3 -002758207 | |

Please detach before presenting for payment

 **ACA Insurance Company**
P.O. Box 24523, Oakland, CA 94623-1523

BANK OF AMERICA, ILLINOIS
SF COMMERCIAL BANKING #1499
345 MONTGOMERY STREET
SAN FRANCISCO, CA 94104

70-2328
719

(8)

CHECK NO. **960717**

AGENT    006-7859
AAA NV INS AGCY/859/COKLEY

POLICY NO.
02-DP3 -002758207

**Two Thousand Four Hundred Ninety and  64/100 Dlrs ***

| INSURED | LOSS DATE | CLAIM NO. | DATE | AMOUNT |
|---------|-----------|-----------|------|--------|
| Renee Martin | 12/02/13 | 0000850641 | 12/12/13 | ***$2,490.64 |

Pay
To
The
Order
Of    RENEE MARTIN

Dwelling Payment - Homeowners

VOID IF NOT CASHED IN 180 DAYS

_____
AUTHORIZED SIGNATURE

⑆960717⑆ ⑈071923284⑈ 8765215431⑈

ENDORSE HERE

X Renee' Martin

Partial Payment Thank

Acceptance only

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE

Original Document

Listed below are the security features provided on this document.
Absence of these features may indicate alteration / duplication: DO NOT CASH

| Security Features: | Results of check alteration / duplication |
|---|---|
| Backer Security Screen | Absence of the words "Original Document" on the back of the document. |
| Microprinting | Small type in the below endorsement will appear blurred if copied or scanned. |
| Void Pantograph | Void appears in pantograph when color copied. |

## CERTIFICATION

Plaintiff: Renee' L. Martin

Defendants: CSAA Insurance Exchange

Case No: 2:15-cv-02496-TLN.EFB PS

## UNITED STATES DISTRICT COURT

July 14, 2016, the documents in an envelope fully paid by first class mail at a US Post Office, which I am familiar with its pick up times with the enclosed document entitled as Plaintiff's Amended Complaint For
 follows: TO:

Richard T. Gortch (Defendant Attorney of Record)
555 Twin Dophin Dr. Suite 300
Redwood City, CA 94065

I declare under penalty of perjury that the foregoing is true and correct.

July 14, 2016

Lynne Smith